[S. F. No. 819.   Department Two.—November 23, 1897.]

## T. CARY FRIEDLANDER, Administrator, etc., Appellant, v. BANK OF CALIFORNIA, Respondent.

TRUST—SALE OF LANDS FOR INDEBTEDNESS TO BANK—JOINT DEBTORS—SEP-ARATE SETTLEMENTS—RELEASE OF ONE DEBTOR EXCEPT AS TO LANDS—SETTLEMENT WITH CODEBTOR—SURRENDER OF NOTES—ACTION BY ADMINIS-TRATOR FOR ACCOUNTING AS TO LANDS.—Where each of two debtors gave his notes to a bank with the other as indorser, and transferred lands and other securities to the bank to secure his indebtedness, upon an express trust to sell the lands to pay the indebtedness, and the bank, for a valuable consideration, surrendered his personal securities to one of the debtors, and released him from liability upon the notes except as to the lands transferred by him to the bank in trust, the settlement in no way touching upon or affecting the rights and liabilities of his codebtor, with whom a separate set-tlement was subsequently had, involving an absolute conveyance of his lands to the bank, and a release of his indebtedness, and sur-render of all the notes to him, such settlement in no way touching upon or referring to the other debtor with whom the first settle-ment was made, the burden of indebtedness remaining upon the lands under the first settlement was not removed or discharged or in any way affected by the second settlement with the codebtor, and such lands, being still held upon the original trust, formed no part of the estate of the deceased trustor, and upon subsequent sale thereof by the bank and application of the proceeds in part payment of the original indebtedness of the deceased trustor to the bank, his administrator cannot maintain an action against the bank for an accounting upon the theory that the entire indebtedness of both debtors was discharged by the surrender of the notes, and that the lands of the deceased debtor were thereby released from the trust, and reverted to the estate.

ID.—CONFLICTING EVIDENCE AS TO NATURE OF SECOND SETTLEMENT—ADMIS-SION OF BANK—CLOSING OF NOTE ACCOUNT—FINDINGS—SUFFICIENCY OF EVIDENCE.—Where there is evidence of circumstances tending to show that the second separate settlement was simply a release of the liability of the debtor with whom it was made, and that the other debtor who had been before released except as to his lands was a stranger to the second transaction, and that it had nothing to do with the charge of his indebtedness upon his lands, or any release thereof, the fact that the bank, in an answer filed in another action, admitted that the entire indebtedness of both debtors was satisfied and discharged by the deed given at the second settlement, and the further fact that all the notes were given up at the time of that set-tlement, and the note account upon the books was then balanced and closed, cannot be held conclusive that the liability of the other debtor charged upon his lands was then discharged, but served only to create a conflict of evidence, the weight of which was matter for the trial court, and its findings against such discharge will not be disturbed for want of evidence to sustain them.

APPEAL from an order of the Superior Court of the City and County of San Francsico denying a new trial. Charles W. Slack, Judge.

The facts are stated in the opinion of the court.

L. D. McKissick, and T. M. Osment, for Appellant.

The settlement with Chapman and his conveyance was an accord and satisfaction of the whole indebtedness, and extinguished the debt as to both debtors, and ended the trust. (*Ransom v. Farish*, 4 Cal. 386; *Strang v. Holmes*, 7 Cow. 224; *Selden v. Vermilya*, 3 N. Y. 525; Civ. Code, secs. 1474, 1521–24; *Chapman v. Bank of California*, 97 Cal. 155.) It is not necessary that the consideration of an accord and satisfaction should be adequate. (*Gavin v. Annan*, 2 Cal. 494; *Sebree v. Tripp*, 15 Mees. & W. 23; *Warren v. Skinner*, 20 Conn. 559; *Ogborn v. Hoffman*, 52 Ind. 439; *Very v. Levy*, 13 How. 345; *Kellogg v. Richards*, 14 Wend. 116.) The surrender of all the notes to Chapman, and the averment in the answer in his suit against the bank that " all said indebtedness was canceled, released, and discharged," and that the " declaration of trust was thereby terminated and canceled," are *prima facie* proof of the extinction of the debt and of the trust, and are conclusive in the absence of satisfactory explanation. (*Harrison v. Peabody*, 34 Cal. 180; *Geary v. Simmons*, 39 Cal. 232; *Kidder v. Stevens*, 60 Cal. 419; *Kamm v. Bank of California*, 74 Cal. 191.)

James M. Allen, and Eugene R. Garber, for Respondents.

The bank was an express trustee of the lands conveyed by Friedlander for the purposes specified in the declaration. (*Vance v. Lincoln*, 38 Cal. 586; *Adams v. Lombard*, 80 Cal. 426; 2 Perry on Trusts, sec. 602, et seq.) The fact that Chapman purchased a release of his liability as surety on Friedlander's notes did not discharge the principal or affect the trust as to Friedlander. (*Burson v. Kincaid*, 3 Penr. & W. 57; *Mortland v. Himes*, 8 Pa. St. 265; *Bridges v. Phillips*, 17 Tex. 128; *McIlhenny Co. v. Blum*, 68 Tex. 197.) The sales of Friedlander's lands were made according to the trust, and in pursuance of agreement with him that the trust should continue as to the lands.

GAROUTTE, J.—Friedlander owed the Bank of California about five hundred thousand dollars, and Chapman owed the bank about two hundred thousand dollars. Each gave his notes to the bank for the amount of his indebtedness, with the other as an indorser. To secure the payment of all these notes Chapman conveyed to the bank about seventy-four thousand acres of land and certain collateral securities. Friedlander conveyed to the bank as security for the notes twenty-four thousand eight hundred and eighty acres of land, and also certain collaterals. These transfers to the bank were made upon an express trust to the effect that the bank should sell the land and apply the proceeds to the payment of this indebtedness. Some months after these transactions Friedlander's financial affairs became desperately involved, and thereupon another agreement was made. By this agreement, for valuable considerations received, the bank returned to Friedlander all his personal securities, and released and discharged him from any liability upon the aforesaid notes other than as to the lands transferred by him to the bank under the original trust contract made at the time the notes were given. This agreement in no way touched upon or affected the rights and liabilities of Chapman. Thereafter, the bank, without objection, entered into the possession of these lands, but the trust at that time had in no part been executed. Subsequently, Friedlander died, and prior to the commencement of the present action the land conveyed to the bank by him in no way entered into the administration of his estate. In August, 1879, about three years after these notes were given, none of the lands held by the bank under the aforesaid trust having been sold, Chapman made overtures to the bank to be released from his indebtedness. These overtures resulted in an absolute deed from him to the bank of the land originally conveyed by him as security. This deed was accompanied by a surrender to him, upon the part of the bank, of all the notes given by him and Friedlander under the original transaction. By this absolute deed of Chapman's lands and the delivery of all these notes by the bank to him, it is claimed upon the part of the Friedlander estate that the entire seven hundred thousand dollars of indebtedness was paid and discharged, and that thereby Friedlander's lands became released from the trust and re-

verted to the estate. It is upon this theory that the estate, by its administrator, brought the present action for an accounting, the land having been sold in the mean time by the bank. Upon the other side, the bank insists that by the transfer of Chapman's land to it, and a delivery of the notes to Chapman, he alone was released and discharged of liability upon the notes, and that Friedlander's land is still held subject to the original trust. Whether Chapman's indebtedness alone to the bank was discharged by his transaction, whereby the bank took title in fee to Chapman's lands, or whether the liabilities of both Chapman and Friedlander upon the notes were discharged by the transaction, is the question in this case.

As to the nature and character of the transaction entered into between Chapman and the bank in August, 1879, the court made findings of fact. By these findings it is declared that Chapman did not satisfy or discharge the indebtedness of Friedlander to the bank, or any part of it, and that no part of the indebtedness of Friedlander to the bank, or any portion of the promissory notes of Friedlander, were canceled, released, or discharged, and that the indebtedness of Friedlander evidenced by said notes had never been paid. The court further declared that by the transaction of August, 1879, the Bank of California released Chapman from personal liability upon all the notes made by him and Friedlander, and returned said notes to Chapman for that purpose only. These findings of fact are square to the point at issue, and, if supported by the evidence, plaintiff has no case. It may be further suggested that there is no direct conflict in the evidence. It also appears that Chapman was not a witness.

The case revolves around the deal entered into and consummated between the bank and Chapman in August, 1879. At that time Friedlander's land was held by the bank under the trust to satisfy this seven hundred thousand dollars of indebtedness. Did this deal release it from the heavy burdens then resting upon it? The contract between the bank and Chapman is an ordinary contract. There is nothing in it to take it out of the general rules pertaining to the construction of contracts. Such being the fact, the question presents itself, What were these two parties trying to do? What was their intention in entering into

this contract?   By a mistake as to the law, contracts often cover more ground and have a different effect than the actual intention of the parties compassed in making them.   But this is no such case, and the intention of these parties, as evidenced by what was said and done at the time, determines the particular result accomplished.   No writing was entered into at the time between these parties indicating the scope and purpose of the transaction, and hence it is to be judged alone by the things done.   There is no question but that this transaction could have occurred exactly as it did occur, and Friedlander's liability to the bank still be kept alive.   Apt words would have done it, for the parties had the power and the right to do it.   In other words, if the transaction between Chapman and the bank was one looking solely to the release of Chapman from this vast indebtedness, then such purpose only was accomplished.   If the contract of the parties was one looking toward the lifting of burdens from Chapman's shoulders solely, then certainly the burdens of other people were not affected by it; and burdens resting upon Friedlander prior to the transaction would rest upon him the same subsequent thereto.   At the incipiency of the transaction this burden of indebtedness rested upon Friedlander's land, and, if it was not in the minds of the parties as an element entering into the making of the contract, it still rested upon the land thereafter.

Friedlander was a stranger to the transaction between Chapman and the bank.   His name was never mentioned; his indebtedness was never mentioned.   The contract was the result of a letter written by Chapman to the bank, wherein Chapman asked the privilege of giving to the bank a deed in fee of all his land held by it as security, in exchange for a release and discharge to him of his indebtedness to the bank upon these notes. He stated in the letter that this indebtedness was crushing him, and that if he could not be freed from it he would have to give up the struggle.   It thus will be observed that Chapman was looking after his own interests entirely.   He had ample troubles of his own, and Friedlander's indebtedness was in no way occupying his attention.   By the proposition submitted to the bank he offered to give all his land for his own discharge.   He did not ask for Friedlander's discharge.   It certainly would be out

of the ordinary course in which banks do business if this bank voluntarily and without consideration of any kind released Friedlander's land from liability. Yet this must be appellant's contention. Upon the heels of this letter a meeting of the parties was had. Chapman gave to the bank an absolute deed of his land, and the notes evidencing the entire indebtedness were delivered to him. A director in the bank, who participated in the transaction, testified: "The bank finally released him from his debts and his obligations, and took the acres of land which he had given as security. The negotiations had nothing to do with Friedlander." The cashier of the bank testified: "After this letter was received the matter was submitted and discussed, and finally we agreed to accept the lands and release Mr. Chapman from the indebtedness. I do not remember of Friedlander's name being mentioned in connection with the final release of Mr. Chapman." If this evidence be taken as true, then certainly no accord and satisfaction of Friedlander's debts took place, but the contract was simply a release of Chapman from liability upon the notes. It is insisted by appellant that these circumstances, which tend to show simply a release of Chapman's liability, are completely overthrown and nullified by other evidence. The principal evidence relied upon for this purpose consists of an allegation found in an answer filed by defendant in another action, to the effect that the indebtedness of both Chapman and Friedlander was satisfied and discharged by Chapman's deed; and the further fact that all the notes were given up to Chapman by the bank, and the note account upon the books balanced and closed. Certainly, the more orderly and better practice would have been for the bank to have issued a release to Chapman, and retained to itself the notes. But a reason was given by the cashier for the practice; and the sufficiency of this reason and the weight to be given the allegation of the pleading were matters very largely addressed to the trial court, and we are bound to assume that they were there given due consideration. This evidence certainly tended to support the theory of the plaintiff as to the nature of the transaction actually occurring between the parties. It tended to overthrow the theory of the defendant as to the character of the transaction, and to overthrow the evidence upon which it relied to support that theory; but in no

sense could it be held conclusive to that point. The weight of it was a matter for the trial court, and that court, as indicated by its findings, deemed it too light to support plaintiff's. claims, when placed in the balances with evidence looking to an opposite conclusion. In other words, it served but to create a conflict of evidence; and we deem there is ample evidence to support the findings of the court upon the matters to which we have been addressing ourselves.

The remaining points made by appellant are of minor importance, and demand no extended consideration.

For the foregoing reasons the order denying a new trial is affirmed.

McFarland, J., and Van Fleet, J., concurred.

Hearing in Bank denied.